# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTINE M. ADAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, ) <br> ) <br> Defendant. ) | Civil Action No. <br> 17-12092-FDS |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DEFENDANT'S MOTION TO DISMISS

This is an action concerning a possible foreclosure on the property of plaintiff Christine M. Adams. The amended complaint asserts two claims under Massachusetts law against the mortgage holder, defendant Wells Fargo Bank.

**I.  Factual Background**

The facts appear as alleged in the proposed amended complaint, except as otherwise indicated.[1]

In November 2007, Christine Adams entered into a "pick-a-payment" mortgage loan with World Savings Bank. In return, World Savings Bank was granted a mortgage on Adams's property located at 136 Oak Hill Avenue in Seekonk, Massachusetts. (Proposed Am. Compl. ¶ 4). Wells Fargo Bank is the successor, through merger with Wachovia Corporation, to World Savings Bank.

In December 2010, Wells Fargo reached a settlement agreement with a class of Wachovia

---

[1] The proposed amended complaint, although more definite than Adams's previous complaint, offers only a bare-bones description of the alleged facts.

borrowers who had entered into "pick-a-payment" mortgages. *See In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing & Sales Practices Litigation*, No. 09-CV-2015-JF (N.D. Cal. Dec. 10, 2010). Adams was a class member whose claim was covered by the settlement agreement. (Proposed Am. Compl. ¶ 5). The settlement agreement divided the class of borrowers itself into three "classes" (A, B, and C), each of which was entitled to a different type of recovery. (Opp. to Mot. for Leave to File Am. Compl., Ex. A at 30-31). The settlement agreement also provided that Wells Fargo would make "loan modifications available" for Class B and Class C borrowers between December 18, 2010, and June 30, 2013. (Opp. to Mot. for Leave to File Am. Compl., Ex. A at 35).

At some point—the pleadings do not indicate when—Adams defaulted on her loan. According to Wells Fargo, Adams has attempted to delay foreclosure in a variety of ways, including the filing of eight different bankruptcy petitions. (Mem. in Supp. at 2 & n.2).

According to Adams, following her default, "in and around 2015," she sought a mortgage modification from Wells Fargo. (Proposed Am. Compl. ¶ 9).

Adams contends that on December 3, 2015, a Wells Fargo representative e-mailed her and told her that a "short sale offer of $375,000" had been approved for her property. (Proposed Am. Compl. ¶ 10; Response to Mot. for More Definite Statement, Ex. A at 45). Later that month, Wells Fargo sent her a letter titled "Mortgage Modification Options" that, among other things, allowed her to "check" a "box" to "request a loan modification." (Proposed Am. Compl. ¶ 10; Response to Mot. for More Definite Statement, Ex. A at 44).

Adams contends that the two communications from Wells Fargo left her "unclear" as to her obligations, but that she tried to go forward with the short sale. (Proposed Am. Compl. ¶¶ 10, 11). A letter apparently sent to Adams on December 3 stated that the short sale had to close

before January 15, 2016.  (Proposed Am. Compl. ¶ 11; Response to Mot. for More Definite Statement, Ex. A at 46-49 ).  At some point, Wells Fargo extended the approval date for the short sale until March.  (Proposed Am. Compl. ¶ 11).  Adams scheduled a closing for January 19, 2016, but (according to her) it could not go forward because Wells Fargo had made a typographical error in its letter granting the extension.  (*Id.*).  Adams requested new approval letters from Wells Fargo, but the bank allegedly "withheld" sending them.  (*Id.*).

In April 2016, Wells Fargo sent Adams a letter indicating that "the short sale process could not be completed" because the deadline of March 2016 had passed.  (Proposed Am. Compl. ¶ 12).  Adams alleges that as a consequence the buyer of her property "lost funding and no short sale could be completed."  (*Id.*).

Adams alleges that on May 15, 2017, Wells Fargo advised her that she had various options to "keep her home," including "a loan modification," and various options to "leave her home," including a short sale or deed in lieu of foreclosure.  (Proposed Am. Compl. ¶ 14; Response to Mot. for More Definite Statement, Ex. A at 5-8).

Adams apparently responded with a "request for mortgage assistance."  (Proposed Am. Compl. ¶ 15; Response to Mot. for More Definite Statement, Ex. A at 9).  On June 22, 2017, Wells Fargo informed her that the bank would not be "moving forward with a review of [her] mortgage for assistance" in light of her "mortgage history, [] recent information you provided [to] us, and the current circumstances surrounding your mortgage."  (Response to Mot. for More Definite Statement, Ex. A at 9).

On June 28, 2017, Adams received a notice from Wells Fargo "to assist [her] in competing a short sale."  (Proposed Am. Compl. ¶ 16).

On July 21, 2017, Wells Fargo sent her another letter stating that she should contact the

bank "for short sale assistance when you receive a purchase contract to sell your home." (Proposed Am. Compl. ¶ 17). It also stated that she would need to sign a "purchase contract" before the bank would "work with [her] to complete a short sale again." (Response to Mot. for More Definite Statement, Ex. A at 11).

At some later point, Adams received a letter from Wells Fargo's counsel indicating that a foreclosure sale on her property would take place on September 21, 2017.[2] However, Adams contends that she was also sent a different notice that identified the foreclosure sale as scheduled for September 20, 2017.

On September 12, 2017, Wells Fargo sent a letter stating that "your concerns were previously addressed by us, and we didn't find you had enclosed any new information or significantly different details which would change our response." (Proposed Am. Compl. ¶ 18; Response to Mot. for More Definite Statement, Ex. A at 13).

On September 20, 2017, Wells Fargo sent a letter stating that the bank was "unable to find a solution and prevent a foreclosure sale before the scheduled sale date." (Proposed Am. Compl. ¶ 19). The foreclosure did not, however, occur in September 2017.

Between September and October 2017, Adams "repeatedly requested accurate pay-off and or reinstatement figures from Wells Fargo." Wells Fargo "failed to provide" this information to Adams in a "timely" manner. (Proposed Am. Compl. ¶ 20).

At some point, Adams sought the "assistance of Massachusetts regulators." (Proposed Am. Compl. ¶ 23). In response, a Wells Fargo employee named Tiffany Bates told Adams that she had informed state regulators that Wells Fargo would be postponing the foreclosure sale of

---

[2] The proposed amended complaint alleges that Adams received the letter on August 22, 2018. (Proposed Am. Compl. ¶ 21). Adams filed the initial complaint in this matter on October 25, 2017; the 2018 letter apparently refers to a 2017 closing date as being in the future.

4

the property and that Wells Fargo would review Adams for a loan modification. Allegedly, however, Bates told Adams that "she was never going to review [her] for" a loan modification. (Proposed Am. Compl. ¶ 23).

## II.     Procedural History

On October 25, 2017, Adams filed a *pro se* complaint and a motion for a temporary restraining order that sought to stop Wells Fargo from foreclosing on her home. The complaint included various unspecific allegations. After Wells Fargo filed a motion for a more definite statement on June 18, 2018, the Court directed Adams to file an amended complaint.

On August 3, 2018, Adams filed a "response" to Wells Fargo's motion for a more definite statement that included a paragraph-long "amended statement to support [the] complaint." The response also included 62 pages of unexplained documents.

On August 15, Wells Fargo filed a motion to dismiss for failure to state a claim. On October 16, Adams, who by then was represented by an attorney, filed a motion for leave to amend the complaint. The motion also includes a proposed amended complaint that seeks to assert two counts: (1) a claim that Wells Fargo violated Mass. Gen. Laws ch. 93A and (2) a claim that Wells Fargo breached its duty of good faith, fair dealing, and reasonable diligence in the foreclosure and mortgage modification process.

For the following reasons, the motion for leave to amend the complaint will be denied and the motion to dismiss will be granted.

## III.    Standard of Review

Under Fed. R. Civ. P. 15(a), leave to amend is generally freely given when justice so requires. However, the Court may deny a motion for leave to amend if "the amendment would be futile." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009). An

5

amendment is futile if the proposed complaint would not survive a motion to dismiss. Accordingly, "[i]n reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

## IV. Analysis

### A. Motion for Leave to Amend Complaint

#### 1. Chapter 93A Claim

Count One of the proposed amended complaint alleges that Wells Fargo engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws. Ch. 93A.

When bringing a claim for a violation of Chapter 93A, the party seeking relief must present the other party with a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon." Mass. Gen. Laws ch. 93A, § 9(3). Adams contends that her "multiple communications, letters, and e-mails to [Wells Fargo] seeking relief in the form of a modification" satisfy Chapter 93A's requirement of a written demand.

A written demand under Chapter 93A "must make clear that the claim arises under that statute, either through: (1) any express reference to c. 93A; (2) any express reference to the consumer protection act; (3) any assertion that the rights of the claimants as consumers have been violated; (4) any assertion that the defendant has acted in an unfair or deceptive manner (G.L. c. 93A, § 2[*a*]); (5) any reference that the claimants anticipate a settlement offer within thirty days . . . or (6) any assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied." *Costello v. Bank of America, N.A.*, 2014 WL 293665, at *4 (D. Mass. Jan. 27, 2014) (quoting *Cassano v. Gogos*, 20 Mass. App. Ct. 348, 350 (1985)). In

other words, "to qualify as a written demand under [Chapter] 93A, a letter must, in addition to defining the injury suffered and the relief sought . . . contain some other signal which will alert a reasonably perceptive recipient . . . that the claimant intends to invoke the heavy artillery of [Chapter] 93A." *Cassano*, 20 Mass. App. Ct. at 350-51.

The proposed amended complaint does not attach or refer to a Chapter 93A demand letter. Nor does it provide any evidence that her communications to Wells Fargo contained any signal that she intended to invoke Chapter 93A. Accordingly, because "a failure to send [a] required demand letter is . . . fatal to a claim brought under [Chapter 93A]," the proposed amended complaint does not state a Chapter 93A claim, and the amendment would therefore be futile. *Murphy v. Bank of America, N.A.*, 2012 WL 4764591, at *2-3 (D. Mass. Oct. 5, 2012) (citing *City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 574 (1987)).

### 2. **Breach of Duties**

Count Two of the proposed amended complaint alleges that Wells Fargo violated its duties to exercise good faith, fair dealing, and reasonable diligence in both the foreclosure and mortgage modification process.

#### a. **Duties Concerning Foreclosure**

Under Massachusetts law, mortgagees "must act in good faith and must use reasonable diligence to protect the interests of the mortgagor" when "exercising a power of sale" in a foreclosure. *Mackenzie v. Flagstar Bank FSB*, 2013 WL 139738, at *10 (D. Mass. Jan. 9, 2013). "[I]t is not possible," however, for a mortgagee to "breach" these duties "before a foreclosure sale has . . . taken place." *Id*. Because no foreclosure sale has yet taken place on the property, Wells Fargo cannot have yet breached any duty it may owe Adams. Accordingly, the proposed amended complaint does not state a claim for breach of duty in connection with a foreclosure

7

sale.

b. **Duties to Modify Mortgage**

After a mortgagor defaults, a mortgagee has "no duty" under Massachusetts law "to negotiate for loan modification" unless there is "an explicit provision in the mortgage contract" or such an obligation is otherwise created by contract or law. *See Peterson v. GMAC Mortg., LLC*, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011).

Adams contends that Wells Fargo had a duty to consider her for a mortgage loan modification under the "terms of the class action settlement" Wells Fargo reached with its "pick-a-payment" borrowers in 2010. Adams further contends that Wells Fargo "never considered" her for such a modification. However, the class action settlement, in a section titled "Settlement Benefits," states as follows: "Loan Modification Program. Commencing on December 18, 2010 and *continuing until June 30, 2013*, the Defendants shall make loan modifications available . . . ." (Opp. to Mot. for Leave to File Am. Compl., Ex. A at 35) (emphasis added). Because the proposed amended complaint contends that Adams did not "[seek] a modification of her mortgage" until "in and around 2015," any duty Wells Fargo may have owed under the class action settlement to consider modifying Adams's mortgage had since long expired. Accordingly, the proposed amended complaint does not state a claim as to a failure to consider modifying her mortgage.

Because all of the claims under the proposed amended complaint would be subject to dismissal for failure to state a claim, the Court will deny the motion for leave to amend as futile.

B. **Motion to Dismiss**

Wells Fargo has moved to dismiss the existing complaint for failure to state a claim. As noted, on July 12, 2018, the Court directed Adams to file an amended complaint setting forth a

more definite statement of her claims by August 2, 2018. On August 3, Adams filed a "response." The response included the following paragraph-long "amended statement to support [the] complaint"[3]:

> Defendant engaged in unfair lending practices under the "Pick-A-Payment" Mortgage Loan Program on or about November of 2007 and continuing to date. Plaintiff was making her mortgage payments on time monthly and received a letter from Wachovia Bank, who then sold plaintiff's loan to defendant, stating that the "Pick-A-Payment" program was considered predatory lending practices. Wachovia thereafter stated they would modify plaintiff's loan with a modified balance $450,000.00 and with an interest rate of 4.125%. Plaintiff executed the application for modification and sent it to Wachovia Bank who informed that her mortgage was "sold" to Wells Fargo and she would have to redo the application. Plaintiff called Wells Fargo repeatedly and was in constant communication through letters and emails only to be informed "we do not have the paperwork" and we have superior loan modification programs from the federal government that would "better suit your needs". Plaintiff has received no less than twenty-five (25) responses from defendant and their assigns addressing her loan and loan modification request with different amounts owed and various proposals, but after she filed this pending suit, defendant engaged in retaliatory practices by stating since she filed suit, they [defendant] would no longer offer her the loan modification and would seek foreclosure and violating 42 USC s3601-19 of the Fair Housing Act.

The statement appears to allege two claims: (1) that Wells Fargo engaged in "unfair lending practices" and (2) that Wells Fargo violated the Fair Housing Act by refusing to modify the mortgage in retaliation for the fact that Adams had sued it.

As to the first claim, that Wells Fargo engaged in "unfair lending practices," the amended statement does not contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the statement describes various communications between Adams and Wells Fargo, it does not identify any "lending practice" of Wells Fargo, let

---

[3] Because Adams was still proceeding *pro se* in August, the Court will overlook the tardiness of the response.

alone any "lending practice" that could be deemed "unfair." Furthermore, none of the 62 pages of attached documents appear to contain any support for the statement's allegation that Wachovia "stated they would modify plaintiff's loan" or for the allegation that Wachovia sent Adams a letter referring to the "Pick-A-Payment" program as a "predatory lending practice." Indeed, the attached documents are left completely unexplained and thus provide insufficient support to consider the statement's first claim as anything other than a "mere conclusory statement[]." *Iqbal*, 556 U.S. at 678.

The second claim alleges that Wells Fargo violated the Fair Housing Act by refusing to modify the loan in retaliation for the lawsuit. The Fair Housing Act provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a).

To establish a *prima facie* case of discrimination under the Fair Housing Act, a claimant must demonstrate first that she is a member of a class protected by the statute. *Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 156 (D. Mass. Oct. 31, 2007). The amended statement does not specifically allege that Adams is a member of a protected class and fails to identify any facts from which the Court could conclude that she is a member of such a class. The amended statement therefore does not state sufficient facts to allege a claim for a violation of the FHA.

Accordingly, the complaint, as amended by Adams's response filed on August 3, 2018, fails to state a claim upon which relief can be granted. The motion to dismiss will therefore be granted.

## V. Conclusion

For the foregoing reasons, the motion of plaintiff Christine Adams for leave to amend the complaint is DENIED. The motion of defendant Wells Fargo Bank to dismiss for failure to state a claim is GRANTED.

**So Ordered.**

Dated: November 20, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge